NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBINA P. CHAUDHARY,<br><br>Plaintiff,<br><br>v.<br><br>BRIGHTVIEW ASSISTED LIVING,<br><br>Defendant. | Civil Action No.: 18-4256 (JLL)<br><br>**OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Defendant Brightview Assisted Living's Partial Motion to Dismiss for Failure to State a Claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 7). Plaintiff Robina A. Chaudhary has submitted Opposition (ECF No. 10), to which Defendant has replied. (ECF No. 12). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants the Defendant's Partial Motion to Dismiss, without prejudice.

### I.    BACKGROUND[1]

Plaintiff is a 54 year old "Asian (Pakistani)" female and a New Jersey resident. (ECF No. 1 ("Compl.") ¶¶ 1, 15). Defendant is a New Jersey corporation and is in the business of operating senior-living communities throughout the United States, including the State of New Jersey.

---

[1] This background is derived from Plaintiff's Complaint, which the Court must accept as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

(Compl. ¶¶ 2-3, 7). On June 27, 2015, Plaintiff became employed by Defendant at one of Defendant's New Jersey locations as a medication aide. (Compl. ¶ 6).

"Plaintiff's primary duty was to distribute medication to the residents of Defendant." (Compl. ¶ 18). Additionally, "during 'down' times, Plaintiff would ... assist" Defendant's nurses with their duties. (Compl. ¶ 20). On August 5, 2016, while assisting one of Defendant's residents out of bed to use the restroom, "Plaintiff injured her back." (Compl. ¶ 21). Thereafter, Plaintiff underwent medical treatment and was advised she could return to work with some restrictions. (Compl. ¶ 22). Specifically, "Plaintiff was restricted from lifting, carrying, pushing [and/]or pulling anything more than 10 pounds." (Id.). Said restriction coincided with Plaintiff's job description as a medication aide, and Plaintiff did not miss any time from work as a result of the aforementioned injury. (Compl. ¶¶ 22-23).

Accordingly, Defendant indicated that it would give Plaintiff light duty assignments when she was required to assist Defendant's nurses, and changed Plaintiff's schedule to the morning shift. (Compl. ¶ 24). However, Defendant allegedly required Plaintiff to assist with moving one of Defendant's residents immediately upon Plaintiff's return to work. (Compl. ¶ 25). Moreover, Defendant allegedly assigned Plaintiff more work than before she was injured. (Compl. ¶ 26). Plaintiff began to experience pain and discomfort when she was making beds. (Compl. ¶ 27). As such, Plaintiff's doctor advised Plaintiff to stop performing this function and Defendant adjusted Plaintiff's duties to exclude same. (Id.). Plaintiff also alleges that her doctor told her she needed to take more frequent breaks when at work, but she was incapable of doing so because of the excessive number of work assignments given to her by Defendant. (Compl. ¶ 28). Plaintiff asserts that other medication aides who worked both the morning and night shifts were not required to

perform the other duties assigned to her by Defendant. (Compl. ¶ 29). Further, Plaintiff alleges that she "was singled out and treated differently and retaliated against because of her disability" and requests for accommodations. (Compl. ¶ 30).

In late September, Defendant sent Plaintiff a letter stating that Defendant's "team" had a meeting to discuss Plaintiff and continuing to accommodate her and her disability. (Compl. ¶ 31). Said letter explained that Defendant was able to create a schedule that would be helpful for Plaintiff, and that this new schedule would remain in effect, pending the outcome of Plaintiff's next doctor's appointment. (Id.). Additionally, Defendant noted that "[s]pecific tasks during each shift will be comply [*sic*] with [Plaintiff's] current restrictions and [would] be discussed with [her] at the start of each shift." (Id.) (internal quotation marks omitted). Plaintiff alleges that, despite this letter, no one ever discussed any accommodation for her disability and her duties remained the same. (Compl. ¶ 32).

Thereafter, Plaintiff's doctor revised her "medical restriction to carrying no more than five (5) pounds." (Compl. ¶ 33). This was allegedly a permanent restriction. (Id.). Following receipt of this new restriction, several of Defendant's executives and supervisors held a meeting with Plaintiff where she was told that her new and permanent restriction could not be accommodated. (Compl. ¶ 34). As such, Defendant terminated Plaintiff's employment on November 28, 2016. (Id.).

Thus, Plaintiff brought this four count action asserting the following claims: Count I – Disability Discrimination Pursuant to the Americans with Disabilities Act ("ADA") and New Jersey Law Against Discrimination ("NJLAD"); Count II – Age Discrimination in Violation of NJLAD; Count III – Race Discrimination in Violation of NJLAD; and Count IV – National

Original Discrimination in Violation of NJLAD. (Compl. ¶¶ 36-48). Defendant now moves to dismiss Counts II – IV. (ECF No. 7).

## II. **LEGAL STANDARD**

To withstand a motion to dismiss for failure to state a claim, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the Court must take three steps. "First, it must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, it should identify that there are well-pleaded factual allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, '[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679) (citation omitted). "In deciding a Rule 12 (b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). The Third Circuit has held that the Court can review the record of prior actions

between the parties and take judicial notice of same in considering a motion to dismiss. *See Toscano v. Conn. Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008).

### III. ANALYSIS

The starting point for an action brought pursuant to the NJLAD is the framework outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See also Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 300 (3d Cir. 2004) ("The Supreme Court of New Jersey has explained the three-step burden shifting analysis 'as a starting point' for analysis of claims under the NJLAD.") (citing *Bergen Commercial Bank v. Sisler*, 157 N.J. 188, 210 (N.J. 1999)). The three-step *McDonnell Douglas* analysis proceeds as follows. First, a plaintiff must establish a *prima facie* case of discrimination. *Monaco*, 359 F.3d at 300. To establish a *prima facie* case of discriminatory discharge under the NJLAD, a plaintiff must demonstrate: 1) that she is a member of a protected class; 2) that she was otherwise qualified and performing the essential functions of the job; 3) that she was terminated; and 4) that the employer thereafter sought similarly qualified individuals for the job who were not members of his protected class. *See Victor v. State*, 203 N.J. 383, 408-09 (2010).

Plaintiff's non-disability-related NJLAD claims (Counts II-IV) all fail for the same reason. While Plaintiff has sufficiently pled that she is a member of multiple protected classes enumerated in N.J.S.A. 10:5-12, *i.e.*, based on her age, race, and national origin, Plaintiff has failed to successfully plead all the other elements necessary to sustain her non-disability-related NJLAD claims. Nowhere within Plaintiff's Complaint does she indicate that she was terminated because of her age, race, and/or national origin.[2] In other words, Plaintiff fails to connect her termination

---

[2] Plaintiff even somewhat concedes this point in her Opposition brief. (*See* ECF No. 10 at 2).

to the various protected classes which she is a member of. Rather, Plaintiff's Complaint only contemplates that Defendant terminated her because of its inability to accommodate her disability. (Compl. ¶ 34).

Additionally, Plaintiff does not plead that Defendant sought other similarly qualified individuals that were not members of the aforementioned protected classes Plaintiff is a member of. In her two-page Opposition to Defendant's Motion, Plaintiff makes mention that Defendant "prefers" "employees without a disability, who were also younger and not of Pakistani descent." (ECF No. 10 at 2). Unfortunately, none of these statements are alleged in Plaintiff's Complaint. As such, the Complaint, as it is currently constituted, cannot sustain the aforementioned NJLAD claims. However, the Court does believe that Plaintiff may be able to cure these deficiencies. As such, the Court will grant Defendant's Partial Motion to Dismiss, but will also grant Plaintiff leave to file a First Amended Complaint that addresses the deficiencies identified herein.

### IV. CONCLUSION

For the aforementioned reasons, Defendant's Partial Motion to Dismiss is hereby granted. Additionally, Plaintiff is granted leave to file a First Amended Complaint. An appropriate Order accompanies this Opinion.

DATED: September 12 2018

JOSE L. LINARES
Chief Judge, United States District Court